UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY DONATO,
    *Petitioner*,

v.                                    No. 3:22-cv-640 (JAM)

TIMETHEA PULLEN, *Warden*,
    *Respondent*.

**ORDER GRANTING MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Anthony Donato is a federal prisoner at FCI Danbury where he is serving a 300-month sentence following his conviction on federal charges including a conspiracy to commit murder and a racketeering conspiracy. *See United States v. Donato*, 848 F. App'x 485 (2d Cir. 2021). He has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking to be released to home confinement under the CARES Act or under the First Step Act's elderly offender pilot program.[1]

The warden has moved to dismiss the petition on grounds including that Donato failed to exhaust his administrative remedies. Federal courts require that prisoners exhaust available administrative remedies before seeking judicial relief pursuant to 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001); *Gotiangco v. Danbury*, 2022 WL 7584716, at *1 (D. Conn. 2022). Federal regulations specifically require prisoners to complete a four-step administrative review process and by means of using particular administrative forms: (1) an attempt at informal resolution using a BP-8 form; (2) a written remedy request to the warden on a BP-9 form; (3) an appeal to the Bureau of Prisons (BOP) regional director on a BP-10 form; and finally (4) an appeal to the BOP general counsel's office

---

[1] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

1

on a BP-11 form. *See* 28 C.F.R. §§ 542.10-19; *Emery v. Pullen*, 2023 WL 348114, at *5 (D. Conn. 2023); *South v. Licon-Vitale*, 2020 WL 3064320, at *1 (D. Conn. 2020).

The warden's motion to dismiss contends by means of a declaration from a BOP official and supporting materials that Donato did not properly and fully exhaust his administrative remedies through the required four-step process.[2] Donato disputes this and argues that he exhausted his remedies.[3]

First, Donato shows that in early April 2020 he completed paperwork to be considered for release to home confinement in accordance with emergency authority granted to the BOP by the Attorney General and consistent with the enactment by Congress of the CARES Act to respond to the dangers to incarcerated persons from the COVID-19 pandemic.[4] *See generally Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 426 (D. Conn. 2020) (describing CARES Act and Attorney General memoranda).

But then Donato learned from his correctional counselor that his application for release had been put on hold pending further review.[5] And so he wrote an email to the warden on April 20, 2020 asking for the status and a statement of reasons if he was denied.[6] The warden responded by email on April 28, 2020 stating: "Your case was reviewed and your referral was pulled back because your instant offense is listed as a crime of violence, per program statement 5162.05. Should the criteria for release pursuant to the [CARES] Act change, your case will be re-evaluated and re-submitted if appropriate."[7]

---

[2] Doc. #12-5 at 3-4 (¶¶ 9-17).
[3] Doc. #1 at 2-3; Doc. #16 at 2-3.
[4] Doc. #1-2 at 18-24 (Exhs. A, B).
[5] *Id.* at 27.
[6] *Ibid.*
[7] *Ibid.*

Donato filed a BP-8 with his counselor for informal resolution on April 28 or 29, 2020 and received a response the same day.[8] He next appealed by means of mailing a BP-10 to the BOP regional director on April 29, 2020.[9] After not receiving a timely response, he then filed a further appeal by means of a BP-11 form with the BOP general counsel.[10] Both these documents state Donato's intention to appeal the warden's decision of April 28, 2020 denying him release to home confinement under the CARES Act.[11]

The problem for Donato is that the warden's decision of April 28, 2020 that he appealed to the BOP regional director and to the BOP general counsel was not in response to a BP-9 that Donato had filed with the warden. The BOP's regulation requires that an inmate file "a formal written Administrative Remedy Request, on the appropriate form (BP–9)" within 20 days of the action for which the inmate seeks a remedy. *See* 28 C.F.R. § 542.14(a). He did not do so and therefore failed to fully exhaust his administrative remedies with respect to the warden's denial of relief on April 28, 2020. *See Rosales v. Petrucci*, 2021 WL 5449701, at *4 (S.D.N.Y. 2021) (prisoner failed to exhaust remedies when he filed an informal relief request but did not follow with formal request to warden).

Donato states that he "interpret[]ed the Warden's email as an Administrative (BP-9) denial."[12] But he does not allege or show that the warden's email of April 28, 2020 was in response to his lodging of any formal administrative remedy request on a BP-9 form. Accordingly, because Donato bypassed the filing of a BP-9 form before seeking to appeal the warden's decision, Donato did not properly exhaust his administrative remedies with respect to

---

[8] *Id.* at 3; *id.* at 29-31 (Exhs. D, E). It is unclear why Donato's BP-9 is dated April 29, 2020—the day *after* the counselor's response which is dated April 28, 2020.
[9] *Id.* at 3, 32-35 (Exh. F).
[10] *Id.* at 3-4, 36-38 (Exh. G).
[11] *Id.* at 33, 37.
[12] *Id.* at 1-2 at 3; *id.* at 26-27 (Exh. C).

his challenge to the warden's decision of April 28, 2020 to deny him release to home confinement under the CARES Act.[13]

According to Donato, however, he "made a second ARP [administrative remedies procedure] attempt" by filing a BP-9 with the warden on May 18, 2020 seeking release under the Attorney General's memorandum and the CARES Act.[14] After the warden failed to timely respond, Donato then filed another appeal by means of a BP-10 to the BOP regional director on July 5, 2020.[15] This appeal was rejected on various procedural grounds, and the record does not reflect that Donato further appealed by means of filing a BP-11 as required with the BOP general counsel.[16] Accordingly, notwithstanding Donato's eventual filing of a formal BP-9 administrative remedy request with the warden, he did not fully exhaust administrative remedies from the denial of this request.

Moreover, Donato's petition for writ of habeas corpus alleges not only that he was improperly denied release to home confinement under the CARES Act but also that he was improperly denied release under the elderly offender pilot program as established under the First Step Act.[17] But Donato does not show that at any time in 2020 he exhausted his administrative

---

[13] In his reply to the warden's motion to dismiss, Donato claims for the first time that the COVID-19 emergency prevented him from obtaining a BP-9 form in order to lodge a formal administrative request with the warden. Doc. #16 at 3. But this suggestion is contradicted by the fact that he had ready access to BP-8 and BP-10 forms that he used on April 29, 2020, Doc. #1-2 at 29, 33, as well as the fact that less than three weeks later he used a BP-9 form to file a formal administrative request with the warden, *id.* at 40-41.
[14] *Id.* at 4, 39-41 (Exh. H).
[15] *Id.* at 42-44 (Exh. I). The regulations require that the warden respond to a BP-9 within 20 days and that if no timely response is made by the warden, then the inmate may treat the lack of a response as a denial. *See* 28 C.F.R. § 542.18. The record reflects that the warden eventually responded to Donato's BP-9 on August 21, 2020. Doc. #1-2 at 47-48. The warden denied relief, concluding not only that "you are inappropriate to be placed on home confinement based on your current conviction for a crime of violence," but also that "your medical records did not identify any conditions which would make you at risk for severe illness related to COVID-19 based on the Centers for Disease Control (CDC) guidelines." *Id.* at 48.
[16] *Id.* at 45-46 (Exh. J).
[17] Doc. #1-2 at 1. Donato also challenges the failure to release him under "the Danbury settlement agreement" and the calculation of his "First Step Act Pattern Risk Score." *Ibid.* But, as the warden notes in her response to the petition, Donato does little to show that he had any independent right to be released under the terms of the class action settlement agreement in *Whitted v. Easter*, 3:20-cv-569-MPS (D. Conn.) or how he was harmed by the calculation of his pattern risk score. Doc. #12 at 5, 9.

remedies with respect to the BOP's decision not to release him under the elderly offender pilot program.[18]

The record shows yet a third attempt by Donato to seek administrative remedies in 2021 and 2022—this time seeking release under the First Step Act's elderly offender pilot program. On July 19, 2021, Donato wrote an email to his case manager stating that "[o]n July 19, 2021, I became eligible for the Elderly Offender Home Confinement Program" and requesting submission for approval.[19] Apparently nothing happened, because more than six months later, Donato filed on February 2, 2022 a BP-8 with his counselor for informal resolution of this request.[20] He received a response from the counselor on February 23, 2022 stating that his offense of conviction did not qualify him for the elderly offender program.[21]

Donato then filed on the same day a formal administrative remedy request on a BP-9 form with the warden.[22] The warden denied relief by means of a formal response on March 18, 2022, concluding that Donato was not entitled to release because of the nature of his prior crimes for a conspiracy to commit murder and a racketeering conspiracy.[23]

But Donato does not claim—and there is no evidence in the record before me—that he appealed the warden's adverse decision of March 18, 2022 to the BOP regional director, much less that he appealed any decision of the BOP regional director to the BOP general counsel.[24]

---

[18] One of the documents filed by Donato is a rejection form dated July 21, 2020 from the BOP regional director's office and that states a subject line of "ELDERLY OFFENDER HOME DETENTION PROGRAM." Doc. #1-2 at 49-50 (Exh. L). But there is no evidence or record that Donato filed a BP-8 and/or a BP-9 in 2020 seeking release under the elderly offender program. Indeed, the rejection form states that Donato "must first file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level." Id. at 50 (capitalization normalized).
[19] Id. at 51-53 (Exh. M).
[20] Id. at 56-57 (Exh. O).
[21] Id. at 58-59 (Exh. P).
[22] Id. at 60-62 (Exh. Q).
[23] Id. at 63-64 (Exh. R).
[24] Id. at 5-6 (describing administrative remedy requests in 2021 and 2022 but without alleging any appeal to the BOP regional director or BOP general counsel); Doc. #16 at 8 (Donato claiming only that "he exhausted the Cares Act ARP" without any similar claim that he exhausted any request for relief under the First Step Act's elderly

Rather than fully exhausting his administrative remedies, he filed this petition for writ of habeas corpus on May 9, 2022.[25]

All in all, I conclude that Donato did not exhaust his administrative remedies. He did not exhaust his remedies in 2020 with respect to his request for relief under the CARES Act. Nor did he exhaust his administrative remedies in 2021 and 2022 with respect to his request for relief under the First Step Act's elderly offender program.

It is true—as Donato notes—that a court has discretion to excuse the administrative exhaustion requirement for federal prisoners. *See Emery*, 2023 WL 348114, at *4. It may do so for any of at least four reasons: that "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Ibid.* (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

As to the first factor, there is no question that available remedies afford a genuine opportunity for adequate relief. Donato wants to be released on home confinement. He does not show that the BOP lacks authority to grant such requested relief through its prescribed administrative procedures.

As to the second factor, I agree with the warden that requiring Donato to properly exhaust the administrative process would not result in irreparable harm.[26] Indeed, if continued imprisonment during the pendency of the administrative remedy process were enough—standing alone—to establish irreparable harm, then courts would have to excuse the administrative

---

offender pilot program).
[25] Doc. #1.
[26] Doc. #12 at 12.

6

exhaustion requirement in all cases where prisoners seek to be released from imprisonment. That makes no sense. *See Paz Nativi v. Shanahan*, 2017 WL 281751, at *2 (S.D.N.Y. 2017). And beyond the harm from continuing imprisonment for the pendency of the administrative remedy process, Donato does not show other extraordinary factors to suggest that he would suffer irreparable harm unless I excuse him from exhausting administrative remedies.

As to the third factor, I agree with the warden that it is premature to conclude that exhaustion would necessarily be futile. To be sure, Donato's chances for relief from the administrative process do not look especially promising. But given the substantial passage of time since Donato's prior attempts to seek administrative relief, I cannot conclusively say that the administrative process would be futile.

In any event, even if the BOP ends up denying administrative relief, exhaustion may create a record that would assist me with evaluating any renewed petition for writ of habeas corpus. *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) (*per curiam*) (noting how "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted" or, alternatively, that "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration").

An administrative record may shed significant light on Donato's claim that it is solely the misclassification of his offenses of conviction that prevents him from being released to home confinement. As the warden notes, Donato's right to release under the CARES Act or the First Step Act requires consideration of multiple factors beyond classification of his offenses of conviction.[27] Therefore, even assuming Donato is correct that exhaustion is not required when a

---

[27] For example, the warden advised Donato in 2020 that he was not eligible for relief under the CARES Act not only because of the nature of his offense of conviction but also because his medical records did not establish that he was

claimant seeks to present a right to relief that depends on a pure issue of law, it is far from clear that Donato's right to relief depends solely on the resolution of a pure issue of law.

Lastly, as to the fourth factor, Donato does not show that he has raised a substantial *constitutional* question. To the contrary, his claim is that he should receive relief in accordance with the statutory and administrative provisions of the home confinement programs under the CARES Act and the First Step Act. He argues that "the Warden and BOP abused their discretion in [their] incorrect statutory interpretation of the unambiguous phrase 'offense of conviction' as it applies to racketeering conspiracy and conspiracy to commit murder convictions [as crimes of violence]" that disqualify him from release to home confinement.[28]

In short, Donato did not properly exhaust his administrative remedies, and he has not shown grounds to excuse his failure to do so. Accordingly, the Court GRANTS the warden's motion to dismiss (Doc. #12). The Court further DENIES as moot Donato's emergency motion to expedite proceedings and DENIES his conjoined motion to amend his petition (Doc. #18). He proposes additional grounds for relief involving the award of credits under the First Step Act but acknowledges that he has not exhausted administrative remedies for such additional relief. Donato may re-file a petition for writ of habeas corpus after he has properly exhausted his administrative remedies as to all grounds for requested relief.

It is so ordered.

Dated at New Haven this 13th day of February 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

especially vulnerable to COVID-19. Doc. #1-2 at 48; *see also* Doc. #12 at 6-7 (describing multiple factors beyond offense of conviction for grant of release under the First Step Act's elderly offender pilot program) (citing 34 U.S.C. § 60541(g)(5)(A)).
[28] Doc. #1 at 6.